67 So.2d 59

**DEPARTMENT OF INDUSTRIAL RELATIONS v. HAYNES.**

**5 Div. 337.**

Court of Appeals of Alabama.

Nov. 27, 1951.

Rehearing Denied Jan. 15, 1952.

Reversed on Mandate Aug. 11, 1953.

Ralph Segrest, Dadeville, for appellee.

J. Eugene Foster and Otis J. Goodwyn, Montgomery, for appellant.

PRICE, Judge.

"This is an appeal from an order of the Circuit Court of Tallapoosa County, Alabama, allowing appellee's claim for unemployment compensation benefits.

"The appellee filed his claim for unemployment compensation benefits on February 14, 1950. His claim was denied, under Section 214 subd. B of Title 26, Code of Alabama 1940, as amended, for having voluntarily left his work without good cause connected with such work. He appealed to an appeals referee. The appeals referee affirmed the original determination. Appellee then took an appeal to the Board of Appeals. Said Board affirmed the previous rulings and denied benefits. Appellee appealed to the Circuit Court of Tallapoosa County, the county of his residence.

"The case was tried in the Circuit Court on one issue alone, this being: Did the ap-

pellee voluntarily leave his work without good cause connected with such work?

"The Circuit Court ruled in favor of the appellee and ordered that benefits be paid to him. Appellant appeals from this order to the Court of Appeals."

The foregoing is copied from the statement of the case in appellant's brief, and is borne out by the record.

The evidence for appellee tends to show that claimant, appellee here, had been employed by the Pepperell Manufacturing Company for approximately two and one half years. During all of said time he was employed as a "doffer," and was paid on production basis. 33 frames was considered production and claimant was paid at the base rate of 99 cents per hour for doffing any amount of frames up to and including production, and if he doffed more frames than production he received extra pay.

On January 15, 1950, a change was made in claimant's work assignment, whereby, in addition to his regular duties, he was required to haul quills to his machine from another room. Prior to this time Negro women were hired to deliver the quills. He contends that this extra duty required approximately thirty minutes each day, for which he received no compensation, and that his rest periods were reduced. When he went to get the quills his machines were out of production, and by reason of the extra assignment his production decreased and his earnings were diminished by $4.00, $5.00 or $6.00 per week.

Claimant also testified that prior to signing up for unemployment benefits he filed an application for employment at the Russell Mills and that he complied with the provisions of Section 213, Title 26, Code 1940, as amended, by registering for work and reporting regularly at the employment office. This fact is not controverted by appellant.

Appellant admits that claimant was assigned the extra duty of quill hauling and that about thirty minutes each day was required to perform this duty. Appellant's contention is that claimant's production was not decreased and that his earnings were not affected by the change in his work assignment. Claimant was assured a minimum of $.99 per hour, and was paid this amount regardless of whether he made production. Appellant also contends claimant was not discriminated against, that beginning January 15, 1950, all doffers on the shift on which appellee worked were required to deliver quills to their machines.

Mr. Sanders, shift foreman, testifying for appellant, admitted that "'doffing' was kind of straining if you have to do it the whole shift; we try to figure so that they can get a rest period on the job rather than have them stay on there during the whole shift." He stated that the quill boxes were hauled during the rest period and was in addition to the normal amount of work, and required about thirty minutes each shift.

The trial court held that claimant did not leave his employment without good cause connected with his work: "The facts produced made and constituted a material change in his status of employment. He was required to do about thirty minutes extra work per day without any additional compensation. His former rest period was decreased substantially. His ability to get production would inevitably be decreased which means actually that the claimant would have been required to do additional work for less pay with a shorter rest period," and that claimant was not disqualified from receiving benefits by virtue of Sub. Sec. B, Sec. 214, Title 26, Code 1940 as amended.

■ The court had the opportunity of hearing the witnesses and observing their demeanor on the stand. Its judgment has the weight of a jury verdict and its findings will not be disturbed unless plainly contrary to the great weight of the evidence. Alabama Mills, Inc., v. Brand, 251 Ala. 643, 38 So.2d 574, and cases cited.

■ We cannot say the judgment in this case was palpably wrong or unjust.

The judgment of the trial court is affirmed.

Affirmed.

## On Rehearing

On application for rehearing appellant asks that we "set out the facts relative to appellee's earnings with the interested employer prior to and after the change in his work assignment, and the facts relative to whether or not the claimant was discriminated against in the assignment of duties."

L. W. Montgomery, personnel Director for the employer, testified to appellee's earnings as follows:

"Q. How many hours did he work in the week just prior to leaving? A. February the 12th, we ended our week on Sunday, the week of February 12th he worked 35 hours, and his gross pay, of course was $42.18. That was before social security, unemployment compensation and withholding tax were taken out.

"Q. How many hours did he work the prior week? A. The week February 5th he worked 42 hours, for which he got paid $47.19, plus $1.12 for overtime pay. You see, he had to work overtime.

"Q. He made his production? A. Yes, sir.

"Q. How about the week prior to that? A. Well, the week prior, January 29, he worked 42 hours and he made $50.21, plus overtime; he made $51.82.

"Q. How about the week prior? A. For the week prior, January 22, he worked 28 hours and he made $29.90.

"Q. How about the week prior to that? A. The week prior was January 19th, he worked 42 hours and he made $54.25, plus $1.42.

"Q. How far does that record go back? A. This record goes back to January 1st.

"Q. How about the week prior to that? A. January 8th, he worked 35 hours that week and he made $33.80, and the week prior he worked 28 hours and he made $25.60.

"Q. Now, the week ending January 1st is the only week that he failed to make production; isn't it? A. The best I could figure out that job it was around January 15th?

"Q. Afterwards the job has made production every week? A. Yes, sir.

"Q. And over production? A. Yes, sir."

On the question of whether claimant was discriminated against in his work assignment, Mr. Earl Sanders, witness for appellant, testified on direct examination:

"Q. Now, Mr. Haynes wasn't the only doffer you had? A. No, sir, they all pushed them in on the shift.

"Q. You required each and every one of them to do that? A. Yes, sir."

And on recross-examination:

"Q. (By Mr. Segrest) How many employees do you have there in the doffing room? A. Well, there is at the present time, there are—

"Q. (Interrupting) I mean just the approximate number? A. Well, on the filling that he was doffing on we have around six, seven or eight.

"Q. Do you have any other doffers that have to go get quill boxes? A. No, sir."

Application overruled.

## PER CURIAM.

Reversed and remanded on authority of Department of Industrial Relations v. Haynes, 259 Ala. 238, 67 So.2d 62.